FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 23, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOHN DELFERT W.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:18-CV-03055-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 16. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 562, 581. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

**GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed his application for Supplemental Security Income on June 6, 2011. *See* AR 217-223, 227-233, 562. His alleged onset date of disability was March 1, 2004.[1] AR 217, 227. Plaintiff's application was initially denied on July 7, 2011, *see* AR 109-112, and on reconsideration on October 28, 2011. *See* AR 116-123. Plaintiff then filed a request for a hearing on December 5, 2011. AR 124-26.

A hearing with Administrative Law Judge ("ALJ") Kimberly Boyce occurred on April 11, 2013. AR 21, 43, 45. On November 4, 2013, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 18-37. On January 28, 2015, the Appeals Council denied Plaintiff's request for review, AR 1-4, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On March 30, 2015, Plaintiff filed an action in this court challenging the denial of benefits. AR 647-49. The parties filed a stipulated motion for remand pursuant to sentence four of 42 U.S.C. § 405(g). AR 653-55. They jointly asked the

---

[1] However, for claims under Title XVI, the application filing date (or protective filing date) is the earliest possible alleged onset date, which in this case was June 6, 2011. *See* DI 25501.370(A)(1).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

court to reverse and remand the case for the ALJ to update the medical evidence—particularly with records from Grant Mental Health—conduct a new hearing, and issue a new decision. AR 654. The court granted the parties' motion and remanded for further administrative proceedings. AR 650-52.

The ALJ held another hearing on May 24, 2017.[2] AR 562, 592, 594. On January 4, 2018, the ALJ issued a second decision, again concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 559-581. Plaintiff did not request review by the Appeals Council, so the ALJ's decision became administratively final once the 60-day period for requesting review expired. AR 560; *see* 20 CFR § 416.1455; 20 CFR § 416.1468(a). On April 10, 2018, Plaintiff timely filed the present action seeking judicial review of the Commissioner's final decision. ECF No. 3. Accordingly, Plaintiff's claims are properly before the Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[2] Plaintiff failed to appear at the hearing, despite the ALJ sending multiple written notices. AR 562, 764, 788. His attorney, however, was present. AR 592, 594. Following the hearing, Plaintiff submitted a letter explaining that he had erroneously believed the hearing was on another day. AR 802. He did not dispute that he had been properly notified. AR 563, 802. In light of this, the ALJ found that Plaintiff had constructively waived his right to appear and issued a decision based on the existing record. AR 563.

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

1  404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

2  burden, the Commissioner must establish that (1) the claimant is capable of

3  performing other work; and (2) such work exists in "significant numbers in the

4  national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*,

5  676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

7       A district court's review of a final decision of the Commissioner is governed

8  by 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). The scope of review under

9  these sections is limited, and the Commissioner's decision will be disturbed "only

10 if it is not supported by substantial evidence or is based on legal error." *Hill v.*

11 *Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a

12 denial of benefits, a district court may not substitute its judgment for that of the

13 ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ

14 presents a reasonable interpretation that is supported by the evidence, it is not the

15 role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

16 Cir. 2001). Even if the evidence in the record is susceptible to more than one

17 rational interpretation, if inferences reasonably drawn from the record support the

18 ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674

19 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-

20 59 (9th Cir. 2002).

*///*

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 42 years old when he filed his application for benefits, which the regulations define as a younger person. AR 52, 217, 580; *see* 20 C.F.R. § 416.963(c). He attended school through the 10th grade and can communicate in English. AR 53, 268, 270, 580. He has a history of abusing methamphetamine and marijuana. AR 403, 575, 961, 976, 1172-73. He has past relevant work as a material handler, which is classified as heavy work. AR 35, 81, 270, 580.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from June 6, 2011 (the date Plaintiff filed his application for benefits) through January 4, 2018 (the date the ALJ issued her second decision). AR 581.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date he filed his application for benefits (citing 20 C.F.R. § 416.971 *et seq.*). AR 565.

**At step two**, the ALJ found Plaintiff had the following severe impairments: spinal impairment, carpal tunnel syndrome, chronic obstructive pulmonary disease

and/or other respiratory impairment, recurrent hernia, gastroesophageal reflux disease, migraine headaches, depressive disorder, anxiety disorders (including posttraumatic stress disorder), and substance use disorder (citing 20 C.F.R. § 416.920(c)). AR 565.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). AR 566.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), including the physical abilities to frequently balance, stoop, kneel, crouch, crawl, and handle, and occasionally reach overhead and climb ramps and stairs. AR 568. However, the ALJ found that he could never climb ladders, ropes, or scaffolds, work at unprotected heights, work with concentrated exposure to respiratory irritants, or work in proximity to hazards such a heavy machinery with dangerous moving parts. AR 568.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff was able to understand, remember, and carry out unskilled, routine, and repetitive work that he could learn by demonstration and where the tasks were predetermined by the employer. AR 568. The ALJ further found that he could cope with occasional

work setting changes, occasional interaction with supervisors, and occasional incidental contact with the general public (although public interaction could not be an essential element of the job). AR 568. He could also work in proximity to coworkers, but not on a team or as part of a cooperative effort. AR 568. Finally, the ALJ found that Plaintiff could meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior. AR 568.

Given his physical limitations, the ALJ found that Plaintiff was unable to perform his past relevant work as a material handler. AR 580.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 580. These included a garment sorter, an inspector/hand packager, and a collator operator. AR 581.

## VI.   Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 12. Specifically, he argues the ALJ: (1) improperly determined that his vision impairment was not severe at step two of the sequential evaluation process; (2) improperly weighed the medical opinion evidence; and (3) improperly discredited his subjective pain complaint testimony. *Id.* at 4-21.

*///*

## VII.   Discussion

**A.    The ALJ Properly Determined that Plaintiff's Vision Impairment was not Severe at Step Two of the Sequential Evaluation Process**

The ALJ concluded that Plaintiff did not have a severe visual impairment at step two of the sequential evaluation process. AR 565. In making this determination, the ALJ relied on Plaintiff's statement to his doctor as well as the results of two consultative examinations. AR 565. Plaintiff contends the ALJ's reliance on each of these three sources was error. ECF No. 12 at 4-6.

At step two in the sequential evaluation, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). First, the claimant must establish that he or she has a medically determinable impairment. 20 C.F.R. § 416.921. The impairment must be established by objective medical evidence—a claimant's statements regarding his or her symptoms are insufficient. 20 C.F.R. § 416.921. Moreover, a diagnosis from an "acceptable medical source," such as a licensed physician or psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 416.921. For claims filed before March 27, 2017—such as this one—advanced registered nurse practitioners (ARNPs) do not qualify as "acceptable medical sources." 20 C.F.R. § 416.902(a)(7).

A diagnosis itself does not equate to a finding of severity. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. § 416.922; *Edlund*, 253 F.3d at 1159.

First, the ALJ relied on a chart note in which Plaintiff told his doctor that he "had [an] injury to his left eye with a paint ball contusion and had to have the lens replaced in that[,] but has good vision in it now." AR 445. Plaintiff argues the ALJ improperly relied on this statement because this improvement was only "relative to a past injury." ECF No. 12 at 4. While Plaintiff did make this statement while discussing a past injury, he nevertheless reported that, following his lens replacement, his vision was "good." AR 445.

Next, the ALJ relied on a June 2013 physical examination performed by orthopedic surgeon David Millett, M.D. AR 565; *see* AR 536-39. Dr. Millett administered a Snellen eye examination[3] and concluded that Plaintiff had normal vision even without the assistance of corrective lenses. AR 537. Functionally, Dr. Millett opined that Plaintiff was able to read very small print, read ordinary newspaper and book print, view a computer screen, and determine differences in shape and color of small objects such as screws, nuts, and bolts. AR 543. Dr.

---

[3] The Snellen eye chart contains 11 rows of letters. The top row contains one letter (usually the capital "E") and the lower rows contain letters that become progressively smaller.

Millett also opined that Plaintiff could avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people and vehicles. AR 543.

Plaintiff argues the ALJ's reliance on this evaluation was improper because "the ALJ assigned minimal weight to [Dr. Millett's] opinion." ECF No. 12 at 4. However, the ALJ only assigned minimal weight to Dr. Millett's opined limitations regarding Plaintiff's ability to perform postural and manipulative activities. AR 578. ALJs are entitled to give significant weight to some portions of a provider's opinion and give less weight to other portions. *See Magallanes v. Bowen*, 881 F.2d 747, 753-54 (9th Cir. 1989) (an ALJ does not have to adopt a physician's opinion in its entirety and can properly reject portions of it); *accord Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

Finally, the ALJ relied on an August 2013 examination by optometrist Douglas Ricks, O.D. AR 565; *see* AR 546-49. Dr. Ricks found that without correction, Plaintiff's distance vision was 20/25 in his right eye, 20/40 in his left eye, and 20/25 in both eyes, and his near vision was 20/40. AR 546. However, with correction, Dr. Ricks found that Plaintiff's distance vision was 20/20 in his right eye, 20/25 in his left eye, 20/20 in both eyes, and his near vision was 20/20. AR 546. Dr. Ricks diagnosed Plaintiff with age-related farsightedness and determined that he needed glasses. AR 547. He opined that with glasses, Plaintiff would be

able to work. AR 547. He concluded that Plaintiff "does not have vision disability by [Social Security] regulations," and that with "proper glasses, [he] does not qualify for vision disability." AR 547.

Plaintiff argues the ALJ failed to consider that he was unable to afford new glasses. ECF No. 12 at 5. However, the ALJ had already addressed this issue in her first decision. *See* AR 28. The ALJ acknowledged Dr. Ricks' opinion that Plaintiff's "vision is correctable with glasses," but found that Plaintiff "ha[d] not attempted to obtain glasses, citing lack of insurance coverage." AR 28. "But even without the glasses," the ALJ reasoned, "the claimant is able to engage in activities such as watching TV and movies, and playing video games." AR 28. Given Plaintiff's ability to engage in these activities without glasses, the ALJ concluded that Plaintiff's visual impairment did not significantly limit his physical ability to do basic work activities.[4] *See* AR 28; 20 C.F.R. § 416.920(c).

Moreover, Plaintiff does not point to any evidence from an "acceptable medical source" to establish that he in fact had a severe visual impairment. *See* ECF No. 12 at 4-6. He cites an ARNP's opinion that he had a marked to severe left

---

[4] The Commissioner argues that any error was harmless because Plaintiff could still perform one of the alternative jobs—a collator operator—even with severe visual impairments, based on the job description in the Department of Labor's *Dictionary of Occupational Titles*. ECF No. 16 at 3-4. Plaintiff, in his reply, argues that this is incorrect for various reasons. ECF No. 17 at 2-4. Because Plaintiff has not shown that any error occurred, the Court need not reach this issue.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

eye impairment, *id.*; *see* AR 980, but this is not an "acceptable medical source" as defined in the regulations. *See* 20 C.F.R. § 416.902(a)(7).

The ALJ properly relied on Plaintiff's statement to his doctor as well as Dr. Millett's and Dr. Ricks' opinions when she concluded that Plaintiff did not have a severe visual impairment. Accordingly, the ALJ did not err at step two of the sequential evaluation process.

**B.     The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 12 at 6-15. Specifically, he argues the ALJ erred in weighing the medical opinions from five providers: (1) treating physician Cole Hemmerling, M.D.; (2) treating physician Joseph Tornabene, M.D.; (3) treating physician Royden Christensen, D.O.; (4) examining nurse practitioner Erika Myers, ARNP; and (5) examining psychologist Mark Duris, Ph.D. *Id.* at 6-9, 11-15. Plaintiff also argues the ALJ erroneously weighed opinions that predated his application filing date. *Id.* at 9-11.

Title XVI's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02

(9th Cir. 2001); *see* 20 C.F.R. § 416.927(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202. A non-examining physician's opinion cannot by itself justify the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

1. **Treating physician Cole Hemmerling, M.D.**

Cole Hemmerling, M.D. is a treating physician. AR 963-64. He diagnosed Plaintiff with moderate degenerative disc disease, moderate chronic obstructive pulmonary disease, and moderate depression. AR 962. He found that Plaintiff could stand for six hours in an eight-hour workday, but that he could not sit for prolonged periods and needed to change positions frequently. AR 959. Given these restrictions, Dr. Hemmerling opined that Plaintiff could perform light work. AR 962. The ALJ assigned great weight to this opinion. AR 579.

Plaintiff argues the residual functional capacity is inconsistent with Dr. Hemmerling's limitations on Plaintiff sitting or remaining in the same position for long periods. ECF No. 12 at 7-8. But the ALJ never concluded that Plaintiff was able to sit or remain in the same position for long periods.[5] *See* AR 568, 579. Thus, the residual functional capacity finding does not conflict with Dr. Hemmerling's opinion.

Plaintiff also argues that the ALJ erred "by granting the most weight to this opinion over three separate concurring opinions of less than sedentary exertional capacity from treating/examining providers in the relevant time period." ECF No. 12 at 8. However, the ALJ explained why the other three opinions were not persuasive and also explained why Dr. Hemmerling's and Dr. Mark Bauer's were.

---

[5] Even if she had, ALJs are entitled to give significant weight to portions of a doctor's opinion while giving less weight to other portions. *See Magallanes*, 881 F.2d at 753-54.

*See* AR 576-580. It is the ALJ's province to weigh the persuasive value of the various medical opinions and absent some legal error—which Plaintiff fails to identify here—it is not the Court's role to reassess those determinations. *Thomas*, 278 F.3d at 954-59.

Finally, Plaintiff argues that the ALJ gave too much weight to Dr. Hemmerling's opinion because his "examination did not cover any the [sic] pertinent impairments." ECF No. 12 at 8. Somewhat contradictorily, Plaintiff later asserts that Dr. Hemmerling "did not even perform a relevant documented examination." ECF No. 12 at 9. However, Dr. Hemmerling's records indicates that he examined Plaintiff's skin, ears nose and throat, cardiovascular system, pulmonary system, abdomen, gait and station, neurological system, back, hips, and lower extremities. AR 962.

### 2. Treating physician Joseph Tornabene, M.D.

Joseph Tornabene, M.D. treated Plaintiff for several months in early 2013. AR 532. He opined that Plaintiff suffered from myelopathic compression of his cervical spine due to spondylosis and nerve root compression. AR 532. He also opined that Plaintiff was disabled from gainful employment because of recurrent syncope with sudden loss of consciousness. AR 533.

The ALJ afforded minimal weight to Dr. Tornabene's statement because it conflicted with his own examination findings as well as Plaintiff's symptom

reports. AR 577-78. Dr. Tornabene's neurologic and physical examination findings were essentially normal with only mild abnormalities. AR 510-11, 517. He ordered an electroencephalogram to test for syncope, which was also normal. AR 515-16. He also noted that Plaintiff's cervical MRI did not show "significant spinal cord compression." AR 507. Based on these MRI results, neither surgery nor injections were recommended. AR 507. Moreover, Plaintiff repeatedly denied losing consciousness, nor had he ever been treated for syncope. AR 1123, 1160. These were proper bases for discounting this opinion. *Bayliss*, 427 F.3d at 1216.

Plaintiff argues the ALJ mischaracterized Dr. Tornabene's findings. ECF No. 12 at 12. He argues that "Dr. Tornabene found positive impingement signs at C6." *Id.* While true, these were only "mildly positive." AR 511. He also argues that his Phalen's and Tinel's tests were positive. ECF No. 12 at 12. While also true, these maneuvers were done on Plaintiff's wrist to test for carpal tunnel syndrome, and they are irrelevant to Dr. Tornabene's disability opinion. *See* AR 517. Plaintiff also argues the ALJ "failed to discuss the EMG testing cited by Dr. Tornabene, which confirmed bilateral C7 myotomal radiculopathy." ECF No. 12 at 12. But again, Dr. Tornabene characterized the EMG findings as "mild." AR 516. Accordingly, Plaintiff fails to identify any error in the ALJ's reasoning for discounting Dr. Tornabene's opinion.

### 3. Treating physician Royden Christensen, D.O.

Royden Christensen, D.O. treated Plaintiff from February 2015 to June 2016. AR 1205-1226. In January 2016, Plaintiff made an appointment with Dr. Christensen "for disability determination." AR 1169. At this appointment, he told Dr. Christensen that his conditions had been steadily worsening since 2012. AR 1169. He reported "chronic pain radiating down both arms." AR 1169. He reported that he spent "most of the day sitting or laying on the couch at least up to 8 hours." AR 1169. Dr. Christensen noted that MRIs had been done, but that he did not have access to them. AR 1170.

Dr. Christensen wrote a disability report opining that Plaintiff was a "poor candidate for work force," that he needed to lie down for eight hours per day, and that he would miss work due to pain in his neck, low back, and down his arms. AR 864-65. Dr. Christensen further opined that these limitations existed since 2012. AR 865. To support his opinion, Dr. Christensen submitted a chart note from Plaintiff's prior pain management doctor, who had done an examination a year and a half earlier. *See* AR 866-68. The examination noted that Plaintiff's range of motion in his cervical, thoracic, and lumbar spine was reduced "but functional." AR 868. Other than this, the examination was normal. AR 866-88.

The ALJ assigned minimal weight to Dr. Christensen's opinion, reasoning that it was heavily based on Plaintiff's subjective pain reports. AR 578. This was a rational interpretation of the evidence, given that Dr. Christensen's report

paralleled the contents of Plaintiff's statements to him (symptoms worsening since 2012, need to lie on couch for eight hours per day, pain down arms, etc.). Moreover, the ALJ concluded that Dr. Christensen's opinion was heavily based on Plaintiff's subjective reports because: (1) the chart note Dr. Christensen submitted in support of his opinion reflected an essentially normal examination; (2) Plaintiff began seeing Dr. Christensen in 2015, yet Dr. Christensen opined that Plaintiff had been disabled since 2012; and (3) Dr. Christensen did not have access to the MRI studies.[6] AR 578. ALJs may appropriately reject medical opinions that are based on a claimant's self-reported symptoms when the ALJ finds those reports not credible. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

### 4. Examining psychologist Mark Duris, Ph.D.

Dr. Duris is an examining psychologist who evaluated Plaintiff in May 2012. AR 973-78. Dr. Duris diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, panic disorder, ADHD, borderline personality disorder, cannabis abuse, and methamphetamine dependence. AR 975. Given his mood and behavioral symptoms from these conditions, Dr. Duris opined that Plaintiff would be unable to function in a work environment even with

---

[6] Plaintiff argues Dr. Christensen based his opinion on clinical evidence and cites several records that contain examination findings. ECF No. 12 at 13 (citing AR 1172, 1176, 1178-79). These, however, are chart notes and reports from other doctors. *See* AR 1172, 1176, 1178-79.

accommodations. AR 976-77. Dr. Duris also noted that Plaintiff was off all his medications and needed to begin taking them again. AR 977.

The ALJ assigned minimal weight to Dr. Duris' assessment. AR 579. First, the ALJ reasoned that Dr. Duris' severe work-related limitations were inconsistent with his actual examination findings, which consisted of cooperative behavior, depressed mood, normal content of thought, normal stream of mental activity, intact orientation, intact memory, impaired concentration, ability to reason concretely and abstractly, and appropriate judgment. AR 579; *see* AR 978. The ALJ also reasoned that just a week prior to this evaluation, Plaintiff established care with a new provider where he had normal mood, normal affect, and did not complain about any psychological issues. AR 579; *see* AR 965-66. Finally, the ALJ reasoned that at the time Dr. Duris performed this examination, Plaintiff was not taking his prescribed psychiatric medications, which Dr. Duris believed he needed. AR 579; *see* AR 977. These were appropriate bases for discounting Dr. Duris' opinion. *See Bayliss*, 427 F.3d at 1216; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff argues that the ALJ inappropriately reinterpreted Dr. Duris' examination findings and that Dr. Duris, "as the evaluator and medical professional, [was] in the best position to determine if these observations support

the opined limitations." ECF No. 12 at 15. Nevertheless, the Ninth Circuit has held that this is a "permissible determination within the ALJ's province." *Bayliss*, 427 F.3d at 1216.

Plaintiff also argues that in discounting Dr. Duris' opinion, the "ALJ instead gave weight to an opinion rendered only one month into the relevant time period from a practitioner who did not review any mental health records."[7] ECF No. 12 at 15. But again, it is not the Court's role to reweigh the persuasive value of the various medical opinions. *Thomas*, 278 F.3d at 954-59. Nor did the ALJ rely *solely* on the "opinion of a nonexamining medical advisor" to reject Dr. Duris' opinion, as Plaintiff suggests. *See* ECF No. 12 at 15. The ALJ incorporated her extensive discussion of the chart notes, examination findings, and observations of many other mental health providers, who documented Plaintiff's normal mood and affect, cooperative behavior, good memory, average intellectual functioning, normal thought process, normal stream of mental activity, intact judgment, and denial of psychological complaints. *See* AR 566-68, 579; *Lester*, 81 F.3d at 831 (an ALJ may properly reject a treating or examining doctor's opinion when he or she relies on a combination of a non-examining provider's opinion, the claimant's test results, and contrary reports from other providers).

---

[7] The first psychologist, Dr. Arthur Lewy, only had limited medical records available because Plaintiff only reported very little medical treatment. AR 91. Despite this, Dr. Lewy still reviewed the records that were available. *See* AR 89-91.

### 5. Nonmedical "Other Source" Opinion

#### a. Lower legal standard

The "specific and legitimate" standard analyzed above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include licensed physicians (*e.g.*, Dr. Hemmerling), licensed psychologists (*e.g.*, Dr. Duris), and various other specialists. *See* 20 C.F.R. § 416.902(a). "Other sources" for opinions—such as nurse practitioners, therapists, social workers, and nonmedical sources—are not entitled to the same deference as acceptable medical sources.[8] *Molina*, 674 F.3d at 1111; *see* 20 C.F.R. § 416.902(a)(7). An ALJ may discount a nonmedical source's opinion by providing reasons "germane" to each witness for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

#### b. Examining nurse practitioner Erika Myers, ARNP

Erika Myers is a nurse practitioner who examined Plaintiff in April 2014. AR 981. She diagnosed Plaintiff with many severe conditions, including a marked to severe left eye impairment. AR 980. She opined that Plaintiff varied between being able to perform sedentary work and being unable to work at all, depending on his symptoms. AR 981. She also opined that Plaintiff's limitations were lifelong and that he would never recover. AR 981.

---

[8] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 416.902(a)(7)-(8). Plaintiff filed his claim in 2011, so this does not apply here.

The ALJ assigned minimal weight to Ms. Myers' opinion. AR 578. First, the ALJ discounted her opinion because she did not document what treatment she provided, if any, what examinations she performed, if any, or what medical evidence she reviewed, if any.[9] AR 578. Therefore, it was unclear to the ALJ what the basis for her opinion was. The ALJ also discounted her opinion that Plaintiff had a severe visual impairment because it conflicted with Plaintiff's own statements, an orthopedic surgeon's opinion, and an optometrist's opinion. AR 578. These were germane reasons for assigning her opinion minimal weight. *See Thomas*, 278 F.3d at 957 (ALJs may discount opinions that are conclusory, unexplained, or inadequately supported by clinical findings); *Morgan*, 169 F.3d at 601-02.

### 6. The ALJ did not err in weighing opinions that predated Plaintiff's application filing date

Plaintiff argues that the ALJ erred by giving significant weight to Dr. Bauer's April 2004 and February 2006 medical opinions. ECF No. 12 at 9-11. Plaintiff argues that Dr. Bauer's opinions were outdated, and that medical opinions that predate the alleged onset of disability are of limited relevance. *Id.* at 10 (citing

---

[9] Plaintiff argues that Ms. Myers was "CC'd on relevant evidence," ECF No. 12 at 12, but this was months *after* she wrote her report concluding that Plaintiff was disabled. *See* AR 1180. Plaintiff also argues that Ms. Myers' report "referenced Dr. Tornabene's treatment, and history of EMG and x-ray studies." ECF No. 12 at 12. However, Ms. Myers simply wrote that these things occurred—she did not indicate that she reviewed them, or what their contents were. *See* AR 980.

*Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).

While Title XVI restricts benefits before the application filing date, Plaintiff

nevertheless alleged that his disability began on March 1, 2004. AR 217, 227; *see*

DI 25501.370(A)(1); *Howard v. Colvin*, No. 3:14-CV-05885, 2015 WL 3477152,

at *4 (W.D. Wash. 2015). In any event, Dr. Bauer was Plaintiff's primary care

physician throughout the 1990s and again from 2004 to 2006, making his opinion

particularly relevant here because Plaintiff's alleged disability was ongoing and not

caused by a discrete event. AR 873, 877, 917-18; *Carmickle*, 533 F.3d at 1165.

///


**C.      The ALJ Properly Rejected Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony

regarding his subjective symptoms. ECF No. 12 at 15-21. Specifically, he argues

that his subjective complaints were not inconsistent with his daily activities, his

substance abuse, or his treatment history. *Id.* at 16-21.

ALJs engage in a two-step analysis to determine whether a claimant's

testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533

F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

In weighing a claimant's credibility, ALJs may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 569. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 569.

In this case, there was evidence of malingering. Nurse practitioner Leona Hays examined him and noted "a lot of pain behavior displayed." AR 447. Several months later, spinal specialist Dr. Steven Fowler noted "multiple pain behaviors [and] overreaction throughout the exam." AR 504, 571. At another appointment,

Dr. Fowler again noted "multiple pain behaviors" and wrote: "I am concerned about some pain behaviors and [there] does not seem to be any unifying diagnosis for his nearly total body pain . . . I am concerned that his complaints are not consistent . . . I have more concern for nonorganic cause at this point." AR 505-06. Affirmative evidence of malingering supports rejecting a claimant's testimony. *See Benton ex. el. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

In addition to malingering, the ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 570-76. The ALJ found that Plaintiff's complaints were inconsistent with the medical evidence, that they were belied by his daily activities, that he exhibited drug-seeking behavior and gave conflicting statements to his providers regarding his drug use, and that he discontinued effective treatment without good reason. AR 570-76. These were all proper grounds for discounting his symptom complaints. *See Carmickle*, 533 F.3d at 1161; *Molina*, 674 F.3d at 1113; *Rollins*, 261 F.3d at 857; *Hanson v. Colvin*, 15-1974-JE, 2017 WL 2432159, at *9 (D. Or. 2017) (holding that drug-seeking behavior is a clear and convincing reason to discount the claimant's symptom testimony); 20 C.F.R. § 416.929(c)(3)(i).

### 1. The ALJ properly found that Plaintiff's daily activities were inconsistent with his symptom complaints

Plaintiff first argues the ALJ improperly found that his daily activities were inconsistent with his subjective complaints. ECF No. 12 at 16-18. He argues that

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27**

the ALJ improperly discounted his credibility based on the fact that he "walked around the hills" while camping with his son, AR 62, and asserts that this was not inconsistent with his complaints because he never testified that he stopped walking *entirely*. ECF No. 12 at 17. He also argues that the ALJ improperly discounted his credibility on the bases that he went camping, played video games, and gardened, given that one of his providers encouraged him to "get out and do more" as part of his treatment plan. *Id.* at 17-18 (quoting AR 1264, 1266).

Even accepting Plaintiff's characterization of the record,[10] the ALJ relied on many additional examples of Plaintiff's daily activities—which were far more strenuous—to discount his subjective symptom complaints. AR 575-76. Plaintiff told Dr. Bauer that he would "lift heavy objects when needed" and that this did not aggravate his back problems. AR 924. He reported to his nurse practitioner that he helped a friend lift a vehicle's transmission. AR 348. The next year, he went to the emergency room for a crush injury after he "and several other people lifted off the front end of a truck weighing at least 500 pounds, probably considerably more." AR 381. One of the other people slipped on some grease, which pinned Plaintiff's wrist between the truck and a metal stand. AR 381. Later that year, he told his

---

[10] Plaintiff actually testified that he could not walk for more than 30 minutes without taking a break. AR 76. The social worker at Grant Mental Health also did not tell him to "get out and do more" as part of his treatment plan—his actual treatment plan included cognitive behavioral therapy, solution-focused therapy, and motivational interviewing, and the goal at the end of this treatment was that he would *then* be able to "get out and do more." AR 1264, 1266.

surgeon that he did "a fair amount of weight training" and the surgeon noted that Plaintiff was "quite fit appearing." AR 418. He told his counselor in October 2012 that he had recently gone hunting with his son for four days. AR 1264. In September 2015, he went to the emergency room again for a wrist injury. AR 983. He told the emergency room doctor that "he had a transmission fall on [his] wrist." AR 985. After this happened, he "took a few days off, but returned to working," which then reaggravated his wrist. AR 985. Plaintiff fails to explain how the ALJ erred in discounting his symptom testimony based on these activities.

2.    **The ALJ properly discounted Plaintiff's credibility based on his drug-seeking behavior and conflicting statements regarding his drug use**

Plaintiff argues the ALJ erred in discounting his symptom testimony based on his drug-seeking behavior and his conflicting statements regarding his drug use. ECF No. 12 at 18-19.

He first argues that marijuana is legal in Washington, so therefore the fact that he denied using "illicit" drugs to his providers was not technically false and should not have been discrediting. ECF No. 12 at 18. However, he also gave conflicting statements regarding when he quit using methamphetamine. He told Dr. Hemmerling that he quit using methamphetamine in 2009 or 2010 after using it for 16 years, *see* AR 960-61, which conflicts with what he told his providers at appointments prior to 2009, where he denied illicit drug use. AR 930, 937.

Plaintiff also argues that his substance use did not affect his psychological state and therefore "was immaterial." ECF No. 12 at 19. But the ALJ did not discount his credibility simply because he used drugs—it was because she found that he selectively denied using them when he was attempting to obtain narcotic prescriptions. *See* AR 575. This behavior suggested to the ALJ that "some of [Plaintiff's] pain symptoms have been exaggerated in order to obtain psychoactive substances." AR 575.

///

### 3. The ALJ properly discounted Plaintiff's credibility because he discontinued effective treatment without good reason

Plaintiff argues that the ALJ improperly discounted his credibility based on his failure to follow prescribed treatment. ECF No. 12 at 19. He argues the ALJ failed to consider whether his noncompliance with treatment was due to other factors such as inability to pay, lack of insurance, or low intellect. *Id.*

However, the ALJ did in fact consider this issue and found that Plaintiff's noncompliance with treatment was voluntary. AR 570, 572-73. The ALJ acknowledged Plaintiff's claim that he did not have insurance for medication. AR 570. However, the ALJ found that this claim was belied by the fact that he was "able to support ongoing cigarette and marijuana use." AR 572; *see also* AR 570.

The ALJ also noted several statements by Plaintiff or his doctors that indicated his noncompliance with treatment was voluntary. After he failed to

follow up with treatment at Dr. Bauer's office for a year, Dr. Bauer noted that Plaintiff "really had no good explanation as to why he never followed up." AR 926. Plaintiff told an emergency room doctor a few years later that he "used to be on a lot of meds, but stopped taking them because . . . his doc wouldn't give him any answers." AR 937. In 2015, when asked why he did not have any medication, he stated, "because I haven't filled them." AR 989.

The ALJ also relied heavily on the fact that Plaintiff declined to stop smoking, even though doing so significantly alleviated his respiratory symptoms. AR 570, 572-73. In 2009, he stopped smoking briefly and reported improved breathing. AR 360. He resumed a few months later and reported dyspnea. AR 354. This pattern occurred again in early 2011, after which Plaintiff acknowledged that resuming smoking was "probably what exacerbated everything." AR 957. This same pattern recurred in subsequent years, *see* AR 445, 451, 984, 990-91, prompting the ALJ to conclude that Plaintiff's noncompliance with recommended treatment was voluntary. AR 570-75.

Plaintiff finally argues the ALJ "relied on evidence prior to the relevant time period" and failed "to differentiate between the relevant period and the period prior to [his] application." ECF No. 12 at 20. The Court has addressed this issue. *See supra* at 25.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the record contained evidence of malingering, and the ALJ also provided multiple clear and convincing reasons for doing so.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 23rd day of September, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge